STATE of Minnesota, Respondent,

v.

Herbert Stanley WARD, Appellant.

No. C1–83–205.

Supreme Court of Minnesota.

June 14, 1985.

William R. Kennedy, Hennepin County Public Defender, Franklin J. Knoll, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Rick Osborne, Michael Richardson, Beverly J. Wolfe, Asst. Co. Attys., Minneapolis, for respondent.

COYNE, Justice.

Appellant, Herbert Stanley Ward, pleaded guilty in 1975 to criminal sexual conduct in the second degree and was committed to the care of the department of public welfare (DPW) pursuant to the provisions of Minnesota's Sex Offenders Act, Minn.Stat. § 246.43 (1978).[1] On September 2, 1982, the commissioner of public welfare applied to the Hennepin County District Court for review and confirmation of his order directing that appellant remain subject to the commissioner's control. Minn.Stat. § 246.-43, subd. 13 (1978). After an evidentiary hearing, the trial court concluded that the appellant is dangerous to the public by virtue of his aggressive sexual proclivities and confirmed the commissioner's order continuing appellant's commitment. We affirm.

In 1975, following entry of appellant's guilty plea, the trial court ordered the DPW to conduct a presentence social, physical, and mental examination pursuant to the provisions of the Sex Offenders Act, Minn.Stat. § 246.43, subd. 1 (1978). The DPW's report recommended that appellant be committed to the care of the commissioner for specialized treatment for his mental and physical aberrations. On December 3, 1975, the appellant was committed, without a hearing, to the care of the commissioner of public welfare. See Minn.Stat. § 246.43, subd. 6 (1978). The commitment order did not specify the term of appellant's sentence. No appeal was taken from the original commitment order.

On August 15, 1977, the commissioner of public welfare ordered the continuance of appellant's commitment and applied to the committing court for a review of that order. Minn.Stat. § 246.43, subds. 11, 12, and 13 (1978).[2] Appellant, accompanied by his counsel, appeared at the hearing on the commissioner's application for review and waived his right to the hearing provided at section 246.43, subd. 14. On October 27, 1977, the committing court confirmed the order directing that the appellant remain subject to the commissioner's control. Id.

Almost five years later, on September 2, 1982, the commissioner issued a new order continuing appellant's commitment and applied for review by the court. Minn.Stat. § 246.43, subds. 13 and 15 (1978). Appellant requested the hearing provided at section 246.43, subd. 14. Glenn Werner, a

---

1. Minn.Stat. § 246.43 (1978) was repealed in 1978 by Act of April 5, 1978, ch. 723, art. I, § 19, 1978 Minn.Laws 762, 770 and in 1979 by Act of May 29, 1979, ch. 258, § 25, subd. 2, 1979 Minn. Laws 548, 556. Section 25 provides: "The sections hereby repealed shall continue to be applicable to any person with respect to acts committed prior to the effective date of this subdivision." 1979 Minn.Laws at 556.

2. Minn.Stat. § 246.43, subd. 11 (1978), requires the commissioner to retain under his control any person committed as a sex offender as long as supervision and control are, in the commissioner's judgment, "necessary for the protection of the public," and also directs discharge of an offender as soon as the commissioner is of the

opinion there is a reasonable probability that the offender can be released without danger to the public. The commissioner cannot discharge a convicted felon in less than two years without court approval. Id. On the other hand, the commissioner may not hold an offender beyond the expiration of his sentence unless the commissioner orders the offender to remain subject to his control and the committing court confirms the commissioner's order. Minn.Stat. § 246.43, subds. 12 and 13 (1978). Subdivision 15 requires the commissioner to make a new order and a new application for review by the court at least every five years. Minn.Stat. § 246.43, subd. 15 (1978).

licensed psychologist at St. Peter Security Hospital, testified that in his opinion appellant had made little or no progress since the evaluation conducted in August of 1979 and would be dangerous to the public if released. Dr. Paul Melichar, a consulting psychiatrist and member of the team of psychiatrists who evaluated appellant, testified that appellant was "no less predatory" in 1982 than when he was admitted to the hospital some seven and one-half years earlier and he concluded that to a reasonable medical certainty appellant would be dangerous to the public if discharged. Appellant, the only other witness, described the various treatment programs in which he had participated, and he testified that even when he was not closely supervised, he had not had trouble with female patients, staff members, or social guests with whom he had come in contact.

Concluding that the state had proved by clear and convincing evidence that appellant is dangerous to the public by virtue of his aggressive sexual proclivities, on November 30, 1982, the court confirmed the commissioner's order continuing appellant's commitment. On appeal from that order, appellant contends (1) that due process requires proof beyond a reasonable doubt—not the lesser standard of proof by clear and convincing evidence—for confirmation of an order for continued commitment pursuant to Minn.Stat. § 246.43 (1978); and (2) that the evidence was insufficient under either standard of proof to support the order of confirmation.

### I.

That involuntary commitment to a mental institution is a deprivation of liberty which cannot be accomplished without due process is a settled principle of Minnesota law. E.g., State ex rel. Doe v. Madonna, 295 N.W.2d 356, 364 (Minn.1980). And it is conceded that in a hearing pursuant to Minn.Stat. § 246.43, subds. 14 and 15 (1978), for review of the commissioner's order for continued commitment, the burden of proof rests on the state. See State

v. Waldon, 287 N.W.2d 628, 631 (Minn. 1979). Appellant contends, however, that in order to meet the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution and of Article I, Section 7 of the Minnesota Constitution the state must prove beyond a reasonable doubt that appellant would be dangerous to the public if discharged; proof by clear and convincing evidence, he asserts, falls short of the demands of due process.

The United States Supreme Court has declared that in a civil commitment hearing the standard of proof by clear and convincing evidence satisfies the due process requirements of the United States Constitution. Addington v. Texas, 441 U.S. 418, 431–33, 99 S.Ct. 1804, 1812–13, 60 L.Ed.2d 323 (1979). The "individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." Id. at 427, 99 S.Ct. at 1810. On the other hand, the standard of proof beyond a reasonable doubt—"a critical part of the 'moral force of the criminal law' "—historically has been reserved for the criminal law. Id. at 428, 99 S.Ct. at 1810, quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Concluding that a state should not be required to employ a standard of proof that may frustrate efforts to further the interests served by civil commitments—interests common to the state and the patient, the court concluded that the standard of proof by clear and convincing evidence strikes a fair balance between the rights of the individual and the legitimate concerns of the state. Id. 441 U.S. at 431, 99 S.Ct. at 1812.

The Minnesota Commitment Act of 1982 expressly requires proof by clear and convincing evidence for commitment, Minn. Stat. § 253B.09, subd. 1 (1984), as did its predecessor, Minn.Stat. § 253A.07, subd. 17 (1980).[3] The Sex Offenders Act contains

3. In State ex rel. Doe v. Madonna, 295 N.W.2d 356, 363 n. 11 (Minn.1980), we interpreted the

no reference to the applicable standard of proof. Although proceedings under sex offender acts are usually characterized as civil proceedings, the appellant contends that they are triggered by a criminal conviction and are closely analogous to juvenile delinquency proceedings in which "guilt"—i.e., delinquency—must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The argument that an analogy between civil commitment and juvenile delinquency requires application of a standard of proof beyond a reasonable doubt in both kinds of proceedings was advanced and rejected in *Addington*, 441 U.S. at 427–31, 99 S.Ct. at 1810–12. We too are not persuaded of the aptness of the analogy.

■ While it is true that proceedings under the Sex Offenders Act accompany criminal proceedings, the act is invoked not by accusation of crime but only by conviction of a sex crime. The facts underlying conviction of a crime or adjudication of delinquency must be proved beyond a reasonable doubt. But the inquiry is aimed at straightforward fact questions susceptible of direct proof—did the accused (either adult or child) commit the act alleged? In this case the answer was admitted: the appellant pleaded guilty to criminal sexual conduct. Once the question has been answered, there is no real basis for drawing an analogy between juvenile delinquency or criminal proceedings and commitment proceedings.

■ In any commitment proceeding under either the Sex Offenders Act or the Commitment Act now in force, the ultimate issue turns on the opinions of expert witnesses, on the testimony of psychiatrists and psychologists. We have previously had occasion to comment upon the fallibility of psychiatric diagnosis and the inherent lack of certainty in psychiatric prognosis. *Johnson v. Noot*, 323 N.W.2d 724 (Minn.

1982). Traditionally, expert medical testimony is couched in terms of a "reasonable medical certainty," as was Dr. Melichar's testimony in this proceeding. In view of the nature of the testimony crucial to the determination whether or not a person shall be discharged from the commissioner's care and control, it seems to us unlikely that the state could ever prove beyond a reasonable doubt that the person is dangerous to the public because of his mental or physical deficiency, disorder or abnormality. We hold that proof by clear and convincing evidence satisfies the due process requirements of the Minnesota Constitution as well as that of the United States.

## II.

The appellant also contends that the evidence was insufficient under either the beyond-a-reasonable-doubt or clear-and-convincing-evidence standard of proof to support the determination that appellant is dangerous to the public by reason of his aggressive sexual proclivities. We disagree.

■ Although the record does not indicate that appellant was involved in any incidents of assaultive behavior during the year preceding the commissioner's order for continued commitment, the staff psychologist, Glenn Werner, testified that the hospital provided a singularly artificial environment and that in his opinion appellant would "act out" in a sexually aggressive manner if given less supervision. Dr. Melichar, the consulting psychiatrist, testified that in therapy sessions appellant's attitude was becoming more hostile and aggressive and he seemed to be having increasing difficulty controlling his anger. Both Dr. Melichar and Mr. Werner were of the opinion that to a reasonable medical certainty appellant was mentally ill and dangerous to the public by reason of his sexual proclivities. Their testimony was not conclusory. There is factual support for their opinions

---

requirement at section 253A.07, subd. 17(a)(1) that commitment be based on a finding "that the evidence of the proposed patient's conduct clearly shows * * *" as equivalent to the clear

and convincing standard sanctioned in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

in the medical record and their opinions were based on their own observations. Their testimony was unrefuted by any other expert witness; the only testimony suggesting appellant's readiness for discharge came from appellant himself.

We have said that when the truth of the facts asserted is "highly probable", the standard of proof by clear and convincing evidence has been met. *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn.1978). Our examination of the record convinces us that there is sufficient evidentiary support for the trial court's confirmation of the commissioner's order for continued commitment.

Affirmed.